**Julius McGRUDER and Conway Gilcrest, Appellants,**

v.

**The PHILLIPS COUNTY ELECTION COMMISSION, et al., Appellees.**

**No. 87–1902EA.**

United States Court of Appeals, Eighth Circuit.

Submitted March 15, 1988.

Decided June 24, 1988.

L.T. Simes, II, West Helena, Ark., for appellants.

Raymond F. Galloway, Helena, Ark., for appellees.

Before JOHN R. GIBSON and FLOYD R. GIBSON, Circuit Judges, and HARPER, Senior District Judge.*

HARPER, Senior District Judge.

Appellants appeal the district court's dismissal of their amended complaint. Appellants are Julius McGruder and the Reverend Conway Gilcrest. They sued the Phillips County Election Commission; and John L. Anderson, Bart Lindsey and Bankston Waters in their official capacities as election commissioners. Appellants based their claims on the Fifth Amendment; the Thirteenth Amendment; the Fourteenth Amendment; the Fifteenth Amendment; 42 U.S.C. § 1973, et seq.; 42 U.S.C. § 1981; 42 U.S.C. § 1983; and 28 U.S.C. § 1343.

The matter was tried before the United States District Court for the Eastern District of Arkansas.

Appellants are two black individuals who are citizens of Phillips County, Arkansas. They were unsuccessful candidates in the Phillips County general election which took place on November 4, 1986. Reverend Gilcrest was the incumbent alderman for Ward 4, Position 2. McGruder was the challenger for Justice of the Peace, District 7. Subsequent to their unsuccessful bid for these offices, appellants filed an action in federal court alleging that appellees, in various ways, denied and abridged the Phillips County citizens' right to vote on account of race. (Appellants have raised eight issues on appeal. Specific allegations contained in the complaint will be discussed below pursuant to each related issue.)

After a hearing, the district court entered an Order dismissing the complaint because appellants failed to allege facts supportive of a violation of Phillips County residents' federal statutory or constitutional voting rights. This appeal followed, and is limited to the applicability of 42 U.S.C. § 1973 et seq. (the Voting Rights Act) to appellants' various allegations. Appellants raise eight issues on appeal:

 I Whether black citizens in Phillips County are denied the right to be present during the tabulation of the ballots.

 II Whether the Election Commission's policy of failure to train and educate election judges, clerks and sheriffs denies black candidates their right to effectively participate in the political process.

 III Whether Reverend Julius McGruder and Conway Gilcrest were discriminated against because of their race.

 IV Whether the Court should order the elimination of the intermingling of the sheriff's department and the Commission.

* The HONORABLE ROY W. HARPER, Senior U.S. District Judge for the Eastern District of Missouri, sitting by designation.

V Whether District Court erred in failing to make detailed findings of fact and failed to discuss all substantial evidence contrary to his discussion.

VI Whether the District Court erred by holding that it had no jurisdiction under the Voting Rights Act and by narrowing the scope of appellants' complaint.

VII Whether the Election Commission denies black citizens the right to bring sample ballots and voting aids into the polling precincts.

VIII Whether black citizens do not have equal access to the Phillips County Election Commission.

Appellants are requesting that we reverse and remand this case with instructions that the District Court order the separation of the sheriff's department, staff and officials from the electoral process; order direct training of the general public; order the availability of voting machines at the offices of black businesses, professions and civic groups; order sufficient training of election judges, clerks and sheriffs; order the Election Commission to cease placing election sheriffs at black precincts only; order the Election Commission to establish objective guidelines for the selection of election judges, clerks and sheriffs; order the Election Commission to establish an objective procedure such that black candidates can verify the accuracy of the vote tabulation; and order the Election Commission to comply with certain Arkansas statutes, discussed below, relating to the election process. Each issue on appeal will be discussed separately.

## I. WHETHER BLACK CITIZENS IN PHILLIPS COUNTY ARE DENIED THE RIGHT TO BE PRESENT DURING THE TABULATION OF THE BALLOTS.

■ Ark.Code Ann. 7–5–316 (1987) states: "After the polls have been closed, any candidate * * * may be present * * * at the count of the ballots * * * for the purpose of determining whether or not the ballots * * * are fairly and accurately counted." Based on the testimony present-ed at the hearing, the District Court found that the following procedure was undertaken pursuant to vote tabulation: Ballot boxes were delivered from the precincts to the circuit courtroom in the courthouse. The vote tabulator was located on a table near the courtroom rail. No barrier existed in the courtroom which would preclude observation of the tabulating process. People were allowed on either side of the rail during the process, so long as enough room was left around the table for counting and tabulating the ballots. We are in agreement with the District Court that plaintiffs have failed to allege any federal violation pertaining to the tabulation of ballots. Plaintiffs have the option, of course, for filing for an election contest in the Arkansas state court. Such an action would not, however, be cognizable in federal court, as there is no violation of the Voting Rights Act, or any other federal statute or constitutional provision. This issue on appeal is denied.

## II. WHETHER THE ELECTION COMMISSION'S POLICY OF FAILURE TO TRAIN AND EDUCATE ELECTION JUDGES, CLERKS AND SHERIFFS DENIES BLACK CANDIDATES THEIR RIGHT TO EFFECTIVELY PARTICIPATE IN THE POLITICAL PROCESS.

■ Appellants' next issue on appeal concerns the training and education of election officials. Appellants contend that a lack of training resulted in the election judges, clerks and sheriffs engaging in behavior which interfered with the voting process and which, in turn, prevented election of appellants to office.

There are no Arkansas or federal statutes imposing a duty on appellees to train and educate election judges, clerks and sheriffs. Nonetheless, the Commission undertook the responsibility of presenting two training sessions, one in 1984 and one in 1986. Neither training session was related to the 1986 general election at issue herein. Nor were they particularly successful since, according to the District Court's findings, only ten to twelve percent

of the judges and clerks who had been notified managed to attend the training sessions. We emphasize the fact that the Election Commission was under no legal obligation to present these training sessions. Failure to train is not violative of the Voting Rights Act.

The District Court further found that the Commission placed a demonstration machine at each polling place, and published instructions to voters, for posting at all polling places. Furthermore, the Commission is willing to make available its voting equipment should any interested group wish to offer a training session.

In view of the fact that the Election Commission is not required by law to train and educate either election personnel or voters, this issue on appeal is denied. Appellants have not taken any action pursuant to training which violates the Voting Rights Act.

### III. WHETHER APPELLANTS WERE DISCRIMINATED AGAINST BECAUSE OF THEIR RACE.

Appellants next complain that as a result of gerrymandering, and the failure of the Commission to properly train election judges, clerks and sheriffs, certain voting machines were improperly installed at one of the polling places.

■ First, appellees were not responsible for the redistricting that appellants refer to and, therefore, cannot be held responsible. This portion of the issue clearly has no merit.

■ Appellants also refer to an incident surrounding the exchange in location of two voting machines at one of the polling places. This particular polling place served three voter precincts, Precincts 16, 17 and 18. McGruder's race for Justice of the Peace appeared on the ballot for Precinct 16, but not Precinct 17. One voting machine for Precinct 16 and one for Precinct 17 were inadvertently interchanged. The mistake was discovered and corrected around 9:00 a.m. The district court could find no showing by appellants that McGruder was harmed by the mix-up in voting machines. If a voter from Precinct 16 had entered a voting machine and found McGruder's name absent from the ballot, the Court reasoned that the voter would have questioned the election officials about the ballot. No evidence was presented that any voter from Precinct 16 experienced this type of difficulty.

■ Appellants also referred in this portion of their brief to an allegation that the appointment of white election sheriffs at black polling precincts was a deliberate and discriminatory act. The District Court found that appellees did, in fact, attempt but fail to obtain black election sheriffs for these positions. Arkansas law requires that election sheriffs be appointed at each voting precinct. Ark.Code Ann. 7–4–107(c)(1987). Since the Commission could not obtain any black individuals to serve as election sheriffs, it was forced to appoint white election sheriffs. This issue on appeal is denied.

### IV. WHETHER THE COURT SHOULD ORDER THE ELIMINATION OF THE INTERMINGLING OF THE SHERIFF'S DEPARTMENT AND THE COMMISSION.

■ Appellants next complain that appellees regularly use deputy sheriffs to deliver election materials when Ark.Code Ann. 7–5–317(b) requires that "election materials and returns shall be delivered by the election judges * * *." Appellants also take exception to the Commission's use of the sheriff's office and personnel in carrying out various election duties. In their brief, appellants describe Phillips County as containing a population of greater than fifty percent black. This population is severely impoverished and, according to appellants, has experienced a history of confrontations and abuses by the sheriff's department. For these reasons, appellants argue that use of sheriff's department employees adversely affects black individuals because the "administration of justice historically has been unequal and unduly harsh upon blacks."

The District Court noted that the county did not have adequate funding to employ

full-time election personnel or to obtain separate offices. Therefore, the use of the sheriff's office and personnel was simply a fact of fiscal necessity due to the county's limited budget. There is no federal law which prohibits this type of intermingling among the election personnel and sheriff's personnel. Appellants did not present sufficient evidence to support their allegations that the intermingling in some way limited their participation in the election process.

Further, although there does seem to exist some question as to the propriety in the use of deputy sheriffs for delivering election materials, this practice would be violative of Arkansas law, not federal law, and, therefore, beyond the reach of the federal court. This issue on appeal is denied.

## V. WHETHER THE DISTRICT COURT ERRED IN FAILING TO MAKE DETAILED FINDINGS OF FACT AND FAILED TO DISCUSS ALL SUBSTANTIAL EVIDENCE CONTRARY TO ITS DISCUSSION.

The transcript contains the district court's forty-five page opinion, in which detailed findings of fact were enunciated. There is absolutely no validity to appellants' contention that the District Court was derelict in its duty to make findings of fact. This argument does not warrant discussion.

■ Appellants also claim the District Court failed to discuss all of the substantial evidence. There is no duty on the part of the District Court to discuss the evidence, only to weigh the evidence, and then to make a determination in the form of findings of fact and conclusions of law, pursuant to Fed.R.Civ.P. 52, based on that evidence and the credibility of the witnesses. The district judge found the evidence could not support a finding that appellees violated the Voting Rights Act. In reviewing the record, we observe, incidentally, that much of the evidence appellants claim the district court ignored was, in fact, addressed in the opinion. We have carefully reviewed the transcript and the parties' briefs. The District Court's opinion thor-

oughly addresses and analyzes the issues raised by appellants. We see no reason to disturb that court's ruling and defer to the trial judge's sound discretion in view of his firsthand observation of the evidence and the testimony This issue on appeal is denied.

## VI. WHETHER THE DISTRICT COURT ERRED BY HOLDING THAT IT HAD NO JURISDICTION UNDER THE VOTING RIGHTS ACT AND BY NARROWING THE SCOPE OF APPELLANTS' COMPLAINT.

Appellants argue that the District Court erred in dismissing their complaint for lack of jurisdiction. The District Court stated that appellants' grievances could properly be litigated in state court. Appellants vehemently contend that black individuals are unable to receive a fair hearing at the state court level. They further contend that, although their allegations may well implicate state law, these allegations also fall under the purview of the Voting Rights Act.

■ A violation of the Voting Rights Act occurs if "as a result of the challenged practice or structure plaintiffs do not have an equal opportunity to participate in the political processes and to elect candidates of their choice." *Thornburg v. Gingles*, 478 U.S. 30, 44, 106 S.Ct. 2752, 2763, 92 L.Ed.2d 25 (1986), quoting Sen.R. No. 417, at page 28, U.S.Cong. & Admin.News 1982, pp. 177, 206. "[T]he essence of a Section 2 claim is that a certain electorate law, practice or structure, interacts with social and historical conditions to cause an inequality in opportunities enjoyed by black and white voters to elect their preferred representatives." *Thornburg*, at 47, 106 S.Ct. at 2764.

The District Court concluded that the evidence presented by appellants did not support their allegations that appellees engaged in any violations of the Voting Rights Act. The court referred to the summary of standards Congress enumerated to guide the courts in determining whether such a violation has occurred. S.Rep. No.

417, at 28–29, H.R.Rep. No. 227, at 30, *reprinted in* 1982 U.S.Code Cong. & Admin.News at 206–07. These detailed standards were relied on in *Buckanaga v. Sisseton Independent School Dist. No. 54–5, South Dakota*, 804 F.2d 469, 471 (8th Cir.1986). They include the following: The extent of historical discrimination; racial polarization in state and local elections; candidate-slating processes; the effects of discrimination in the areas of education, employment and health; racially-oriented political campaigns; and minority representation in elected public offices. *Buckanaga* noted that Congress has pointed out two additional facts which might be relevant to the determination of whether a Voting Rights Act violation has occurred; whether there is a lack of responsiveness on the part of elected officials to the particularized needs of a minority group; and whether the policy underlying the state or political subdivisions' use of such voting qualification prerequisites to voting, standard, practice or procedure is tenuous. *Buckanaga* stated that the above listed factors are not an exhaustive summary of the possible indications of a Voting Rights Act violation.

In reviewing the record, we are in agreement with the District Court that the challenged standards, practices and procedures did not establish a violation of the Voting Rights Act. (The specific challenges are fully discussed in Issues I, II, III, IV and VII.) Appellants may opt to litigate these issues in the state court. There is no evidence to support appellants' argument that they will be denied a fair trial at the state level. This issue on appeal is denied.

## VII. WHETHER THE DISTRICT COURT PROPERLY HELD THAT THE ELECTION COMMISSION DID NOT DENY BLACKS THE RIGHT TO BRING SAMPLE BALLOTS AND VOTING AIDS INTO THE VOTING PRECINCTS.

Appellants argue that appellees took away voting aids and sample ballots from black voters, and that this behavior was motivated by a racially discriminatory purpose. The illiteracy rate among black citizens in Phillips County is extremely high and, appellants reason, voting aids are required in many instances to enable black voters in voting for the candidates of their choice.

Ark.Code Ann. 7–1–103(9) (1987) states that "[n]o person shall hand out or distribute * * * any campaign literature or any literature regarding any candidate or issue on the ballot * * * or do any electioneering of any kind whatsoever within one hundred (100) feet of the polling place on election day." Testimony was presented to support appellees' contention that the election officials did not prohibit voters from carrying voting aids into the polling place. The District Court found that the election officials were enforcing the Arkansas law which prohibits the display of campaign materials in and around the polling place. Arkansas law recognizes a distinction between voting aids and campaign materials. Under Ark.Code Ann. 7–5–608 (1987), a sample ballot is an example of the type of voting aid allowable in the polls in Arkansas. The District Court could find no support for appellants' argument that appellees collected any materials other than campaign materials from the black voters. There is nothing in the record that suggests appellees impermissibly took voting aids from black voters. This issue on appeal must be denied as the Voting Rights Act is not implicated in any manner.

## VIII. WHETHER THE DISTRICT COURT PROPERLY HELD THAT BLACK CITIZENS HAVE EQUAL ACCESS TO THE PHILLIPS COUNTY ELECTION COMMISSION AND/OR POLITICAL PROCESS.

Appellants claim that there has never been a black representative on the Phillips County Election Commission. The Election Commission is comprised of three members. The chairmen of both the Democratic and the Republican County Committees are automatic members of the Commission. The third member is selected by the State Board of Election Commissioners,

which is composed of seven state-wide-elected constitutional officers and four more individuals selected by them. This third member is selected from a list of suggested names submitted by the majority party to the State Election Commission.

Ark.Code Ann. 7–4–102 (Supp.1987) mandates that the Commission be composed of the chairmen of the two local party committees, and that the third member be selected as described above. This procedure is controlled by state law. Appellants have not challenged the constitutionality of the Statute. The appellees have no control over the method by which the Election Commission members are chosen. This is an area over which the District Court has no jurisdiction. The issue on appeal is denied.

Affirmed.